**James C. GARDNER, Appellant,**

v.

**Q. H. S., INC., a corporation, and J. M. Fields, Inc., a corporation, Appellees.**

No. 15393.

United States Court of Appeals,
Fourth Circuit.

Argued May 5, 1971.

Decided Aug. 31, 1971.

Russell, Circuit Judge, did not participate in decision.

See also D.C., 304 F.Supp. 1247.

Augustine T. Smythe, Charleston, S. C. (Buist, Moore, Smythe, & McGee and Stoney & Stoney, Charleston, S. C., on brief), for appellant.

Coming Ball Gibbs, Jr., Charleston, S. C. (Gibson, Gibbs & Krawcheck, and Barnwell, Whaley, Stevenson & Patterson, Charleston, S. C., on brief), for appellees.

Before WINTER, BUTZNER and RUSSELL,* Circuit Judges.

WINTER, Circuit Judge:

In this products liability case, the owner of an apartment building, substantially destroyed by fire when hair rollers used by a tenant ignited and set fire to it, sought to recover his loss from the manufacturer of the hair rollers (Q. H. S., Inc.) on the theories of negligence and breach of implied warranty, and the retailer (J. M. Fields, Inc.), from whom the tenant had purchased them, on the theory of breach of implied warranty. The district judge granted judgment for both defendants at the conclusion of the plaintiff's case. He did so because he concluded that under the proof the hair rollers were not inherently dangerous, and that the tenants' negligence in permitting the hair rollers to ignite was the proximate cause of the fire. Because the hair rollers were not inherently dangerous, he also concluded that the manufacturer was under no obligation to give any greater caution concerning the use of the hair rollers than that actually given.

We disagree. We think that jury issues were presented on both theories of liability and that the district judge unduly restricted the proof as to foreseeability of a potentially dangerous substance. We reverse and remand for a new trial.

I

The fire that destroyed the apartment building began when some plastic hair

---

* After hearing argument, Judge Russell disqualified himself from participating in the decision of the case or in any further proceedings therein. He did so because he then became aware of the similarity of the case to one in which one of the parties to this appeal was a party, and in which he had made preliminary rulings as a district judge. Counsel were promptly notified and elected to have the case decided by the balance of the panel rather than to reargue it to another panel. Judge Russell indicates no views on this opinion.

rollers caught on fire in a pot without water on the stove in the kitchen of an apartment occupied by two young nurses. The fire spread to the wall behind the stove, into the attic, and eventually destroyed the building.

The rollers were cylindrical in shape and consisted of a plastic cover filled with paraffin. The directions instructed that the rollers should be boiled in water for fifteen minutes, after which they were to be removed from the water and hair wrapped around them, secured in place by means of a clip. The paraffin melted by the boiling water retains heat and thus would impart a curl to the rolled hair.

On Sunday morning, July 14, 1968, one of the nurses, Miss Runge, returned to the apartment after working a night-duty private-nursing shift. Her roommate was asleep in bed. In preparation for attendance at church, Miss Runge at about 7:40 A. M. put the rollers in a pot containing water on an electric stove set at "high" and went to take a bath. She fell asleep in the bath tub; and, while she was asleep, the water boiled out of the pot, the rollers ignited, and the general conflagration followed. Both nurses saw the fire begin and called for help, and some workmen ran up the stairs. They testified that they saw flames erupting from a pot on the kitchen stove and that the flames were swirling into the hood fan above the stove. Their efforts to extinguish the fire were without success.

At trial, evidence was offered to show that paraffin ignites at 525° Fahrenheit, that the temperature of the coil on an electric stove is in the neighborhood of 3000° Fahrenheit when turned on high, and that the probability of the rollers catching on fire if the water should boil out of the pot, with the stove at any temperature materially above 525°, is virtually 100%. Testimony also

indicated that when twelve rollers (the number used by Miss Runge) catch on fire, they burn for six or seven minutes with a very intense flame that billows four or five feet above the containing receptacle.

The printed material on the box in which the rollers were marketed consisted of instructions for use, together with a "cautionary note," set forth in the middle of the instructions. This warning was printed in the same size type as the rest of the instructions, and read:

> Use plenty of water. Do not let water boil away. Cautionary note: Rollers may be inflammable only if left over flame in pan without water. Otherwise Q. H. S. Setting/Rollers are perfectly safe.[1]

The manufacturer's president testified that, before the product was marketed, tests for flammability were conducted. He claimed that the tests showed that when the rollers were boiled in water there was never any problem with the product. He also claimed that even when the water was permitted to boil away, fire would not result on an electric stove, although on a gas stove fire would result if the product were contained in a pan sufficiently shallow to permit open flame to reach the melted paraffin.

Plaintiff sought to prove that the rollers were dangerous under conditions of foreseeable use, that Q. H. S. had notice of such danger and had notice also that its "cautionary note" was insufficient warning to guard against that danger. The proof tendered, almost all of which was excluded, consisted of depositions of approximately twenty-five persons who claimed to have experienced similar casualties with Q. H. S. rollers, letters of complaints received by Q. H. S. from those who had experienced fire, explosions and like occurrences, and the testimony of a professor of chemistry who

---

1. When asked to read the warning during his testimony, the president of Q. H. S. interposed the word "open" before the word "flame." Counsel for plaintiff treats this insertion as a Freudian slip of great significance in the light of the president's subsequent testimony that Q. H. S.'s tests indicated that the paraffin would ignite only if heated over a gas stove, but not over an electric stove.

had conducted a test of flammability of Q. H. S.'s product. Admission of the depositions was denied by the district judge on the ground that they would introduce too many collateral issues. The letters were refused, except those which expressly complained of fire, on the ground that they contained prejudicial self-serving statements and because they, too, would introduce collateral issues. The professor's testimony was limited to demonstrating that the fire could have been caused by the rollers if precisely twelve rollers were used. He was not permitted to describe his experiments using other than twelve rollers, which plaintiff argues would have had probative value in establishing that the rollers were dangerous in a variety of circumstances and that Q. H. S. would have known this if it had conducted proper tests. Finally, Q. H. S.'s president was not permitted to be cross-examined as to whether he had read an article in Consumers Report that the product was causing fires in substantial numbers throughout the country and that the manufacturer's warning was inadequate. Nor was he permitted to be questioned as to whether he had engaged in correspondence with the Federal Trade Commission about the adequacy of the warning in regard to the proper way to extinguish paraffin should it ignite.

## II

■ The district judge seemed overly concerned that the hair rollers were not inherently dangerous. We do not share his concern. Since the landmark decision of Mac Pherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1916), the necessity of determining, in a suit for negligence, what products are inherently dangerous and which are not —a doctrine which had been developed to avoid the supposed privity requirement of Winterbottom v. Wright, 10 M. & W. 109, 152 Eng.Rep. 402 (1842)— has been rendered largely academic.

See discussion, W. Prosser, Law of Torts, § 96, at pp. 658–61 (3rd Ed. 1964). For the law has now reached the stage of development that a supplier and a manufacturer of a chattel are liable to all whom they should expect will use the chattel or be endangered by its use if (a) they know or have reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, (b) they lack reason to believe that the user will realize the potential danger, and (c) they fail to exercise reasonable care to inform of its dangerous condition or of the facts which make it likely to be dangerous. 2 Restatement of Torts, 2d §§ 388 and 395 (1965 Ed.). The same is true with respect to a cause of action for breach of an implied warranty of merchantability under the Uniform Commercial Code, as that warranty is breached when goods are not "fit for the ordinary purposes for which such goods are used." Code of Laws of S.C., § 10.2–314 (1966). See also Chestnut v. Ford Motor Company, 445 F.2d 967 (4 Cir. 1971). This is the law of South Carolina which we must apply in this diversity action. Mickle v. Blackmon, 252 S.C. 202, 166 S.E.2d 173 (1969). See also Spruill v. Boyle-Midway, Incorporated, 308 F.2d 79 (4 Cir. 1962), which, although arising under the law of Virginia, was treated as persuasive of South Carolina law in Mickle, supra.

■ The essential issue in this case is thus one of foreseeability, both under the proof which was admitted and some of that which was rejected, because, as we said in Spruill:[2]

"Intended use" is but a convenient adaptation of the basic test of "reasonable foreseeability" framed to more specifically fit the factual situations out of which arise questions of a manufacturer's liability for negligence. "Intended use" is not an inflexible formula to be apodictically applied to every case. Normally a seller or manufacturer is entitled to anticipate that

2. The following passage was quoted verbatim in Mickle v. Blackmon, 166 S.E.2d at 187.

the product he deals in will be used only for the purposes for which it is manufactured and sold; thus he is expected to reasonably foresee only injuries arising in the course of such use.

However, he must also be expected to anticipate the environment which is normal for the use of his product and where, as here, that environment is the home, he must anticipate the reasonably foreseeable risks of the use of his product in such an environment. These are risks which are inherent in the proper use for which his product is manufactured. 308 F.2d at 83–84.

And based upon how the issue of foreseeability is determined, the adequacy of Q. H. S.'s warning must be considered.

By Q. H. S.'s specific instructions, the hair rollers were intended to be boiled in water to heat them sufficiently to impart curl to hair subsequently wrapped around them. While we do not suggest that Q. H. S. should have foreseen that Miss Runge would fall asleep in the bath tub, the experience of a momentary interruption which results in one's permitting water in a pot to boil away is so common and so generally known that we think that a jury might well conclude, even in the absence of more specific proof, that Q. H. S. should have known that this occurrence would happen not infrequently when its product was being used. In short, a jury might well conclude in the words of *Spruill,* that Q. H. S. should have anticipated that a normal environment for use of its product included application of heat to its product under circumstances when the degree of heat applied was not limited by the normal boiling point of water—212° Fahrenheit.

Under the proof offered, the jury might well have also concluded that Q. H. S. knew or should have known that the degree of uncontrolled heat to which its product would be subjected, in those instances in which the pot was permitted to boil dry, would exceed the normal ignition point of paraffin.

Having reached these two conclusions, the jury could also, in our view, conclude that the "cautionary note" was inadequate to inform the user to use the extraordinary degree of caution necessary to avoid the dangerous consequences of improper or extraordinary use of the product. It is true that the user was instructed to use plenty of water and not to let the water boil away. But if the user disobeyed these instructions, he was told only that the product *"may"* be inflammable if left over *"flame"* in pan without water; otherwise, the product was *"perfectly* safe." The user was not told that the rollers contained paraffin. Some users would certainly conclude that "flame" did not include electrical heat. The user was not told that there was a strong possibility that the paraffin would ignite if the water boiled away and that flames of a considerable height could erupt if the paraffin ignited. And what cautionary notice was given was in printing of the same size as the general instructions and unobtrusively made part of them. See, 1 Frumer & Friedman, Products Liability, § 8.05[1], and cases cited therein.

Viewing the evidence in the light most favorable to plaintiff—the test to be applied because a directed verdict was granted—we think that there was sufficient evidence in support of each of the elements necessary to establish negligence on the part of Q. H. S. to require that the jury have the case submitted to it. And while the separate theories of negligence and breach of warranty are not always coextensive, we think this same evidence sufficient to constitute a jury issue as to whether the rollers were of merchantable quality.

The district judge was in error also in his apparent conclusion that Miss Runge's falling asleep was an act of intervening negligence which, as a matter of law, was the proximate cause of the fire and thereby insulated defendants from any liability on their part which the jury might have found had the case been submitted to it. Here again, under

South Carolina law, the issue is one of foreseeability. The South Carolina rule is succinctly stated in Mickle v. Blackmon, 166 S.E.2d at 181:

The rule is firmly established that the intervening negligence of a third person will not relieve the original wrongdoer of responsibility if such intervention should have been foreseen in the exercise of reasonable care. 'In such case the original negligence still remains active, and a contributing cause of the injury.' Woody v. South Carolina Power Co., 202 S.C. 73, 24 S.E.2d 121; Matthews v. Porter, 239 S.C. 620, 124 S.E.2d 321. 'The wrongdoer may be held liable for anything which, after the injury is complete, appears to have been a natural and probable consequence of his negligence.' Brown v. National Oil Co., 233 S.C. 345, 105 S.E.2d 81.

From what we have already said, the jury may well have concluded that permitting the pot to boil dry should have been foreseen by Q. H. S. so that whether defendants' negligence and breach of implied warranty, if such were found, was a proximate cause of the damage was another jury issue.

### III

Our views expressed thus far imply our disagreement with the district judge's principal evidentiary rulings in regard to plaintiff's efforts to prove foreseeability. Since there must be a new trial, we consider these rulings in greater detail and indicate what should have been admitted.

██ Where the issue is one of foreseeability, evidence of what has actually been experienced in the same or comparable situations constitutes proof of the greatest probative value. The only other way foreseeability can be proved is by expert testimony and in most instances it, too, will depend upon actual experience developed by laboratory or everyday experience. In our view, depositions of other users of the product who had experiences similar or identical to that of Miss Runge were clearly admissible to show defendants' knowledge of the harm their product could inflict, provided only that those experiences were brought to the attention of the defendants, or either of them, prior to the incident involved here. Spruill v. Boyle-Midway, Inc., 308 F.2d at 88–89. See, 1 Frumer & Friedman, Products Liability, § 1201[2], and cases cited therein.

Similarly, letters of complaints should have been admitted where they described identical or similar experiences, except that in those instances where letters were written by attorneys engaged in making self-serving statements and advancing conclusions of law, specific letters may be withheld from the jury by the district judge, in the exercise of his discretion, on the ground that their prejudicial effect outweighs their probative value in regard to the issue to which they were directed.

██ We think also that the testimony of the professor of chemistry who conducted flammability tests should have been admitted, even where those tests were not confined to precisely the same conditions under which the rollers sought to be used by Miss Runge caught fire. See, 1 Frumer & Friedman, Products Liability, § 12.02[2], and cases cited therein. Defendants, and especially Q. H. S., were chargeable with knowledge that the rollers could and probably would be used under a variety of conditions, and the district judge should have been liberal in admitting testimony of this nature for its probative value on the issue of whether Q. H. S. conducted proper tests and whether Q. H. S. had knowledge that its warning was deficient. Of course, the district judge again retained discretion to exclude evidence of any particular test which he found had so little probative value that it was outweighed by the prejudicial effect of the circumstances under which it was conducted.

██ Finally, we think that the president of Q. H. S. should have been permitted to be cross-examined as to the ar-

ticle in Consumers Report, provided that the article had been published and was read by him, before the time of the fire in this case. If the president had not read the article, the jury should be cautioned that the question of counsel on cross-examination did not constitute evidence, and, whether he admitted reading it or not, the jury should be cautioned that they might not rely upon the article for the truth of the legal or factual conclusions it contained.

 We agree that the president ought not to have been questioned as to his correspondence with the Federal Trade Commission, since that correspondence was limited to the adequacy of the warning in regard to the proper way to extinguish paraffin should it ignite.

## IV

Defendants contend that in any event they cannot be liable to plaintiff because of the contributory negligence of two employees of plaintiff's predecessor in title in failing to respond promptly when they first noticed smoke emanating from the apartment occupied by the two nurses. There was some testimony that they wilfully ignored this sign of fire, and there was also testimony from an allegedly expert fire investigator that the extent of the fire could have been severely restricted if the fire department had been summoned earlier.

We do not foreclose decision on this point on retrial or indicate how it should be decided, but we conclude the issue is not ripe for adjudication by us now. The district judge did not grant judgment on this ground; a full record has not been developed; and the applicable South Carolina law, i. e., whether contributory negligence is a defense in a suit for breach of implied warranty, is barely discussed in the briefs.

The same is true with respect to defendants' argument that plaintiff's suit against them cannot be maintained because of lack of privity. See Code of Laws of S. C., § 10.2–318 (1966); Springfield v. Williams Plumbing Sup-

ply Co., 249 S.C. 130, 153 S.E.2d 184, 187 (1967); Salladin v. Tellis, 247 S.C. 267, 146 S.E.2d 875 (1966); Odom v. Ford Motor Co., 230 S.C. 320, 95 S.E.2d 601 (1956). It is true that in colloquy the district judge indicated that he would not be troubled by this defense, but this was not the basis of the judgment he granted and the legal point has been briefed only by defendants. We do not foreclose consideration of this issue and we do not decide it.

Reversed; new trial granted.