555 F.2d 1184
 Ezra H. BARNES, Jr., Appellant,
v.
LITTON INDUSTRIAL PRODUCTS, INC., Appellee,
v.
SULTAN CHEMISTS, INC., Third-Party Defendants.
Samuel HEISLER and Robert S. Whitley, Appellants,
v.
LITTON INDUSTRIAL PRODUCTS, INC., Appellee,
v.
SULTAN CHEMISTS, INC., Appellee.
 Nos. 76-1398, 76-1831.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 8, 1976.
Decided May 25, 1977.
 
 F. Guthrie Gordon, III, Charlottesville, Va. (John C. Lowe, Lowe & Gordon, Ltd., Charlottesville, Va., on brief), for appellant.
 Albert D. Bugg, Jr., Richmond, Va. (Nathan H. Smith, Sands, Anderson & Marks, Richmond, Va., on brief), for appellee.
 Before CLARK,* Associate Justice, and WINTER and RUSSELL, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 In these diversity actions, plaintiffs Barnes, Heisler and Whitley sought damages for loss of sight caused by their drinking "burning alcohol," a product which is predominantly methanol (wood alcohol), sold by defendant Litton Industrial Products Company. From orders granting summary judgment for defendants, plaintiffs appeal. We affirm in part, reverse in part, and remand.
 
 I.
 
 2
 The district court decided two suits: one, a suit by Barnes against Litton Industrial Products Company, Inc. (Litton), the distributor of the burning alcohol, and the other a suit by Heisler and Whitley against Litton. In both cases, Litton impleaded Sultan Chemists, Inc., the manufacturer of the product. Since the parties agree that the facts and issues in both suits are identical, we consolidated the appeals.
 
 
 3
 Barnes, Heisler and Whitley were inmates at the State Penal Farm in Goochland County, Virginia. The hospital facility at the institution contained a laboratory where a supply of burning alcohol was kept. Burning alcohol is used to fuel bunson burners and for melting wax to form wax bits and rims. The burning alcohol was kept in cylindrical, opaque bottles bearing a label as set forth in the margin.[1] The alcohol was kept under lock and key, but dental assistants (who were prisoners) could request a bottle from stock and had unsupervised access to a bottle in use.
 
 
 4
 Whitley and Barnes, both dental assistants, learned from a part-time dentist, Dr. Alexander, about a test that Dr. Alexander had utilized when he was in the army to determine whether alcohol products were potable. Using defendants' product, Dr. Alexander performed a burning test and told them that poisonous alcohol burned yellow and non-poisonous alcohol burned clear blue. On that occasion the product burned blue. Whitley and Barnes thus concluded that the alcohol was safe for consumption. They, along with a third inmate, Heisler, consumed two bottles of the alcohol. All three were totally blinded.
 
 
 5
 Litton's sales are almost exclusively to dentists and professional dental laboratories. At its Richmond, Virginia store, where the prison farm made its purchases, only one-tenth of one percent of Litton's gross sales were made to the general public, and these consisted primarily of nondangerous products such as dental floss. Litton's policy is that all sales are to be restricted to dentists or dental laboratories, and the sale of burning alcohol to nonprofessionals is strictly prohibited. However, plaintiffs submitted affidavits by three persons who attempted to purchase burning alcohol at the store. Two were successful, both purchasing from the same employee, though in purchasing one stated he was purchasing on his dentist's account. The third person was told such sales were for dentists and other professionals alone.
 
 
 6
 In the district court, plaintiffs relied on two theories of recovery: first, that the defendants were liable as a matter of law to the plaintiffs for failure to label the alcohol as required by federal and state laws, and, second, that the defendants violated a common law duty to provide an adequate warning of the dangers of drinking the alcohol. The district court granted summary judgment for defendants holding that, as a matter of law, labeling was not required by federal and state statutory law, there was no duty to warn of the dangers of consuming the alcohol, and even if there was a duty to warn, defendants discharged that duty. Barnes v. Litton Indus. Prods. Co., 409 F.S. 1353 (E.D.Va.1976).[2] While we agree with the district court that defendants breached no duty of labeling imposed by federal or state law, we think that it cannot be said that defendants are entitled to summary judgment as a matter of law on plaintiffs' claim that defendants violated their common law duty to give adequate warning.
 
 II.
 
 7
 Both the Virginia Hazardous Household Substances Law, Va.Code §§ 3.1-250 to 3.1-261 (Repl.Vol.1973), and the Federal Hazardous Household Substances Act, 15 U.S.C. §§ 1261 to 1274 (1970), require that, under defined circumstances, "hazardous substances" be labeled in a particular fashion.[3] "Hazardous substances" not properly labeled if "intended, or packaged in a form suitable, for use in the household or by children" become "misbranded hazardous substances." 15 U.S.C. § 1261(p) (1970); Va.Code § 3.1-250(q) (Repl.Vol.1973). Regulations promulgated pursuant to the federal and state statutes clarify the packaging or type of sale prerequisite for a hazardous substance to become a misbranded hazardous substance, stating
 
 
 8
 the test shall be whether under any reasonably foreseeable condition of sale, purchase, storage, or use the article may be found in or around a dwelling
 
 
 9
 and noting the following exception to the labeling requirement
 
 
 10
 (a)n article labeled as, and marketed solely for, industrial use does not become subject to this act because of the possibility an industrial worker may take a supply for his own use.
 
 
 11
 16 C.F.R. § 1500.3(c)(10)(i)(1976); see Rules and Regulations for the Enforcement of the Virginia Hazardous Household Substances Law § 1(c) (1968) (almost identical language).
 
 
 12
 The legislative history of the federal law makes even clearer that its purpose is to require labeling for substances that will in ordinary course be found in homes. See H.R.Rep.1861, 86th Cong., 2d Sess., reprinted in (1960) U.S.Code Cong. & Ad.News, p. 2833, ("The purpose of this bill is to provide nationally uniform requirements for adequate cautionary labeling of packages of hazardous substances which are sold in interstate commerce and are intended or suitable for household use"); H.R.Rep.No.2166, 89th Cong., 2d Sess., reprinted in (1966) U.S.Code Cong. & Ad.News pp. 4095, 4095-96 (passage of act inspired by large number of children injured in the home by coming in contact with these substances).
 
 
 13
 Since defendant sells burning alcohol only to professional dentists and professional dental laboratories for professional use, and plaintiffs have failed to show, and do not contend they can show, that consumers regularly purchase the alcohol for household use, we agree with the district court that neither federal nor state statutory law requires labeling as a hazardous substance. At best, plaintiffs have shown that, at a representative outlet, only two individuals who sought to purchase burning alcohol for their own use were able to do so. Given this small number of sales, and the fact that the regulations under both federal and state law specifically provide that isolated instances are not sufficient to require labeling, the alcohol was not subject to their requirements as to labeling. We reject plaintiffs' contention that since the prison is a household and sales are made to a prison, labeling must be required. We do not think sales to a laboratory located in a prison can be considered sales to a household. Even if the prison were a household, plaintiffs have failed to show such sales are significant in number.
 
 III.
 
 14
 In Spruill v. Boyle-Midway, Inc., 308 F.2d 79 (4 Cir. 1962), we agreed with the contention that a manufacturer is liable only for injuries caused in the course of the intended use of its product, but we added:
 
 
 15
 "Intended use" is but a convenient adaptation of the basic test of "reasonable foreseeability" framed to more specifically fit the factual situations out of which arise questions of a manufacturer's liability for negligence. "Intended use" is not an inflexible formula to be apodictically applied to every case. Normally a seller or manufacturer is entitled to anticipate that the product he deals in will be used only for the purposes for which it is manufactured and sold; thus he is expected to reasonably foresee only injuries arising in the course of such use.
 
 
 16
 However, he must also be expected to anticipate the environment which is normal for the use of his product and where, as here, that environment is the home, he must anticipate the reasonably foreseeable risks of the use of his product in such an environment. These are risks which are inherent in the proper use for which his product is manufactured. 308 F.2d at 83-84.
 
 
 17
 See also Gardner v. Q.H.S., Inc., 448 F.2d 238 (4 Cir. 1971); McClanahan v. California Spray-Chemical Corp., 194 Va. 842, 75 S.E.2d 712 (1953).
 
 
 18
 The intended use of burning alcohol is not as a beverage, but as a fuel. However, it is well known that alcohol is a component of many beverages, as well as many foods, and many beverages are consumed primarily because of their alcohol content. The label did not warn of the dangers of drinking burning alcohol. It is true, as the district court noted, that the label did state that the alcohol was for use in a torch and it was an adult inmate dental assistant who first drank the alcohol, but it does not follow that plaintiffs were necessarily aware of their peril. Dr. Hurowitz, a dentist at the prison laboratory, did not know whether the substance was potable,[4] and there was evidence from which it could be inferred that Dr. Alexander believed it was potable. If a dentist did not know the danger of ingesting burning alcohol, the knowledge possessed by a technician or untrained assistant in a dental laboratory is even more speculative.
 
 
 19
 Defendants were bound to know that their product would be used in a dentist's office or in a dental laboratory, including the laboratory at the prison farm. Indeed, defendants' label states that the product is "For Professional Dental Use Only." We think that a jury might reasonably conclude that defendants also knew that access to the product would not be limited to dentists and their trained assistants, but would include some untrained and unsophisticated personnel, including maintenance workers. Because of the word "alcohol" in the label, a jury might well conclude also that the product was an attractive possibility for beverage purposes for many. In short, we think that it cannot be said that as a matter of law a jury might not conclude that defendants should reasonably have foreseen that an inmate assistant in a penal farm laboratory might attempt to drink a substance so plainly labeled as alcohol and that therefore there was a duty to warn that consumption of the substance could lead to blindness or death and that the warning given by defendants was inadequate. Cf. Olgers v. Sika Chemical Corp., 437 F.2d 90 (4 Cir. 1971).
 
 
 20
 In disagreement with the district court, we also do not think that Litton can be held as a matter of law to have met any obligation to warn that was imposed on it.[5] Restatement of Torts, 2d 388, Comment n. (1965) (various factors determine whether the means that have been chosen to notify of the harm are sufficient); Weekes v. Michigan Chrome & Chemical Co., 352 F.2d 603 (6 Cir. 1965); Bertone v. Turco Prods., Inc., 252 F.2d 726 (3 Cir. 1958); see also Reeves v. Power Tools, Inc., 474 F.2d 375 (6 Cir. 1973). We therefore reverse the entry of summary judgments for defendants and remand the cases for trial on the plaintiffs' alleged cause of action that defendants breached a common law duty to warn. We, of course, do not indicate any opinion on the merits, nor do we foreclose the interposition of any defenses such as contributory negligence or intervening cause.[6]
 
 
 21
 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 
 
 
 *
 Associate Justice, Supreme Court of the United States, Retired
 1BURNING ALCOHOL
 FOR USE IN THE ALCOHOL TORCH AND TO FLAME INSTRUMENTS BEFORE USE For Professional Dental Use Only Caution: Federal law prohibits dispensing without a prescription Keep away from open flames and heat
 
 
 [2]
 The district court first granted summary judgment for defendant in Barnes v. Litton Indus. Prods. Co., No. 76-1398, and it is that opinion which was published. The court then granted summary judgment for defendants in No. 76-1831, involving Heisler and Whitley, based upon its decision in Barnes
 
 
 [3]
 15 U.S.C. § 1261(f) (1970); Va.Code § 3.1-250(g) (Repl.Vol.1973) set forth definitions of hazardous substances. Under these definitions, burning alcohol is a hazardous substance
 
 
 [4]
 Dr. Hurowitz stated that burning alcohol was many times ethanol and not methanol. Ethanol, if swallowed, may be intoxicating but is not otherwise harmful
 
 
 [5]
 Inasmuch as Dr. Hurowitz testified that he did not know whether such alcohol was drinkable and that he was nobody's boss at the laboratory, this case cannot be decided on the basis of Littlehale v. E. I. duPont de Nemours & Co., 268 F.Supp. 791, 799 (S.D.N.Y.1966), aff'd, 380 F.2d 274 (2 Cir. 1967) (per curiam), and Marker v. Universal Oil Prod. Co., 250 F.2d 603, 606-07 (10 Cir. 1957), since the inherent danger of the product was not equally within the knowledge of the manufacturer and "employer." Restatement of Torts 2d § 388(b) (1965)
 
 
 [6]
 While we have treated all three plaintiffs alike for the purpose of determining whether summary judgment was appropriate, the record suggests differences in their situations which might preclude recovery by some but not all. For instance, there are statements to the effect that Whitley and Heisler were warned not to drink the substance, but there is no evidence indicating Barnes was given such a warning