Ralph G. **MARSHALL**, Appellant,

v.

The H. K. **FERGUSON COMPANY**, an Ohio Corporation, and Ponndorf Maschinenfabrik KG, a West German Limited Partnership, Appellees.

Ralph G. **MARSHALL**, Appellee,

v.

The H. K. **FERGUSON COMPANY**, an Ohio Corporation, Defendant,

and

Ponndorf Maschinenfabrik KG, a West German Limited Partnership, Appellant.

Nos. 79–1079, 79–1080.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 5, 1979.

Decided May 5, 1980.

John J. Sabourin, Jr., Fairfax, Va. (Hazel, Beckhorn & Hanes, Fairfax, Va., Lloyd Rials, Williamsburg, Va., on brief), for appellant, Ralph G. Marshall.

Richard Wright West, Newport News, Va. (West, Stein, West & Smith, Newport News, Va., on brief), for appellee, The H. K. Ferguson Company.

John S. Norris, Jr., William T. Prince, Norfolk, Va. (Williams, Worrell, Kelly & Greer, Norfolk, Va., on brief), for appellee, Ponndorf Maschinenfabrik K.G.

Before FIELD, Senior Circuit Judge, and MURNAGHAN and SPROUSE, Circuit Judges.

FIELD, Senior Circuit Judge:

The plaintiff, Ralph G. Marshall, filed this action against The H. K. Ferguson Company, an Ohio corporation, (Ferguson) and Ponndorf Maschinenfabrik KG, a West German Limited Partnership, (Ponndorf) to recover damages for personal injuries which he sustained on July 22, 1976, in the course of his employment at the Anheuser-Busch brewery in Williamsburg, Virginia.[1] Marshall was severely burned by the emission of steam, hot water and hops from a spent hops conveyor when he opened the cleaning flap of the machine. At the conclusion of the plaintiff's evidence the trial court granted the motion of Ponndorf for a directed verdict, and thereafter the jury re-

---

1. Marshall was covered by the Virginia Workmens' Compensation Act and, accordingly, Anheuser-Busch was immune from any common law action by him. Va.Code § 65.1–40 (1968).

turned a verdict in favor of the remaining defendant, Ferguson. Judgment was entered for both of the defendants and the plaintiff has appealed.

The brewing facility at Williamsburg was designed and constructed by Ferguson working jointly with technicians and engineers of Anheuser-Busch. Under such an arrangement, Ferguson constructed five breweries for Anheuser-Busch in various parts of the country, including the one at Williamsburg. All of these breweries included the same spent hops conveyor system as that used in Williamsburg when Marshall was injured. Each of these systems employs, as one of its components, a conveyor manufactured and sold by Ponndorf designated as the Ponndorf Model 150 (the Ponndorf). The Ponndorf upon which Marshall was working at the time of his injury had been purchased for the Williamsburg brewery some time in 1970 and had been in use since that time.[2]

The Ponndorf is a relatively simple piece of equipment, consisting of a screw or auger mechanism which is housed in a cylindrical casing some ten feet in length. Its function is to move spent hops, which have been discharged from a brew kettle and separator located on the floor above, into a disposal tube. The spent hops enter the Ponndorf by gravity through a chute attached to an opening in the top of one end of the Ponndorf. The function of the separator is to remove the spent hops, a thick pulpy material, from the liquid called wort which is a preliminary form of beer. Once the spent hops have fallen down the chute into the Ponndorf, they are carried forward by the turning of the auger to the downstream end. (For purposes of clarification, the end of the Ponndorf closer to the chute will be designated the "upstream" end, while the other end of the Ponndorf will be referred to as the "downstream" end).

When the hops have reached the downstream end of the Ponndorf, they enter the disposal tube into which hot air or steam is injected to propel the hops through the tube where they are ejected into a storage tank. A motor is attached to the upstream end of the Ponndorf and is the source of power for the auger. Directly beneath the chute at the upstream end of the Ponndorf, but not a part of the Ponndorf itself, is a metal plate which can be removed for the purpose of entering the bottom portion of the chute. Below this plate is a series of "weep holes" and underneath the upstream end of the Ponndorf is a circular opening to which a drain valve is attached. At the extreme downstream end of the Ponndorf is the opening from which the hops are emitted into the tube leading to the storage tank, and near this downstream end is the clean-out port which is situated on the upper side of the Ponndorf.

This spent hops disposal system extends over three floors of the brewery, and because of the nature of the material being conveyed, the entire system has the potential for clogging or plugging. To minimize such plugging, the system is ordinarily cleaned every other day by using a caustic agent in a process which is termed "solutioning". Among the various valves in the overall system is a knife valve which is located directly beyond the downstream end of the Ponndorf. It is situated between the end of the Ponndorf and the intake area of the disposal tube for air and steam pressure. The purpose of this valve is to permit the buildup of pressure within the disposal tube to propel plugs of hops toward the storage tank. With the knife valve closed, air or water pressure cannot escape back into the Ponndorf nor up through the chute leading from the upper floor.

Proper use of the knife valve also assists Anheuser-Busch personnel determine the lo-

2. At the time of Marshall's injury Anheuser-Busch had two Ponndorf conveyors at its Williamsburg brewery. One unit was installed by Ferguson when it constructed the brewery, and shortly after Anheuser-Busch took over the brewery operation a second conveyor was purchased directly from Ponndorf. Under the op-

erating procedures, when one Ponndorf requires maintenance it is replaced by the other unit. There was some evidence that the unit involved in Marshall's injury was the one originally installed by Ferguson. In any event, it is conceded that the two units are identical in design and operation.

cation. of a clog in the disposal system. If, with the knife valve closed, an injection of water or steam fails to produce an expulsion of material in the storage tank end of the tube, the source of the clog must, necessarily, be within the disposal tube itself. If, on the other hand, the injection of water or steam into the disposal tube, with the knife valve closed, passes freely into the storage tank, it indicates that the clog is somewhere upstream of the knife valve. In either event, the buildup of water or steam pressure in the disposal tube can be safely released by opening the valve directly below the upstream end of the disposal tube. After permitting the back flush of water or steam out of the disposal tube through this valve, the knife valve can be opened without permitting steam or water pressure to infiltrate the Ponndorf. This permits safe inspection of the Ponndorf end of the system to determine the source of the clog. Under such circumstances the only pressure within the system upstream of the knife valve is of a minimal nature caused by the force of gravity from the hops within the chute. Thereafter an examination for the clog can be done either from the upper level through the chute opening or by releasing the drain outlet beneath the upstream end of the Ponndorf. The plate beneath the chute can also be safely opened, and as a final check the clean-out port near the downstream end of the Ponndorf can be opened to determine if that is the site of the clog.

Marshall had been employed by Anheuser-Busch since March of 1972, and worked as a laborer performing many different tasks. On the day of his injury, Marshall was working under the supervision of Clifton E. Gardner who was thoroughly familiar with the disposal system of the brewery. A clog had developed and Gardner and Herman Parks, a brew kettle operator, tried unsuccessfully to flush out the plug. Incident to their efforts, they opened and closed the knife valve several times and also injected water into the system. Gardner concluded that the clean-out flap of the Ponndorf should be opened to determine whether the clog was in that area. Since Gardner

was a supervisor, the union rules did not permit him to work on the machine itself, and he called upon Marshall to remove the clean-out flap. Marshall was not familiar with the system and Gardner gave him a wrench and instructed him to remove the two bolts which secured the clean-out flap. Marshall made two or three turns on both the top and bottom bolts, and when he started to make another turn on the top bolt the cleaning flap blew off and Marshall was struck by scalding water, steam and hops. At trial Gardner testified that he warned Marshall of the pressure buildup within the Ponndorf, but Marshall testified that the only cautionary remark made by Gardner was to "watch it".

The plaintiff, challenging the directed verdict for Ponndorf, contends that the conveyor designed, manufactured and sold by Ponndorf was defective. Specifically, the plaintiff argues (1) that the pressure within the Ponndorf rendered it an unreasonably dangerous product; (2) that the Ponndorf was defectively designed; and (3) that Ponndorf breached its duty to warn the plaintiff of the inherent and non-obvious danger incident to the use of the machine.

■ On his first point the plaintiff concedes that in order to establish liability he must prove (1) that the Ponndorf was unreasonably dangerous either for the use to which it would ordinarily be put or for some other reasonably foreseeable purpose, and (2) that the unreasonably dangerous condition existed when the machine left the defendant's hands. *See Logan v. Montgomery Ward & Co., Incorporated,* 216 Va. 425, 528, 219 S.E.2d 685, 687 (1975). We agree with the district court that the plaintiff failed to make out a prima facie case under this theory of liability. There is no evidence whatever that the Ponndorf contained any defect. Indeed, the evidence showed that the machine operated precisely as it was designed to do. Marshall's unfortunate injury was not caused by any defect inherent in the design or construction of the Ponndorf, but resulted from the procedures followed by the employees of Anheuser-Busch in their attempt to locate and relieve the clog in the disposal system.

■ We find little merit in the plaintiff's charge that the Ponndorf was defectively designed. The testimony of the plaintiff's expert witnesses on this issue was not confined to the Ponndorf, but to a large degree was addressed to the entire disposal system of the brewery. There was no showing that the changes suggested by them with respect to the Ponndorf, itself, were compatible with its operation or otherwise feasible. At best their recommendations were largely speculative in nature, designed to ensure that the equipment would be completely accident-proof. A manufacturer, however, is not required to supply such a utopian product for "the rule is well settled that neither designer nor manufacturer has a legal duty to adopt or produce a process or product incorporating only features representing the ultimate in safety." *Marker v. Universal Oil Products Company,* 250 F.2d 603, 605 (10 Cir. 1957). *See Featherall v. Firestone Tire and Rubber Co.,* 219 Va. 949, 252 S.E.2d 358, 367 (1979); *Dreisonstok v. Volkswagenwerk, A. G.,* 489 F.2d 1066, 1071 (4 Cir. 1974).

■ In his argument that Ponndorf breached its duty to warn of an inherent and non-obvious danger in the use of its conveyor, the plaintiff relies upon § 388, *Restatement of Torts* 2d (1965 ed.).[3] This section of the *Restatement,* which was recently applied by the Supreme Court of Virginia in *Featherall v. Firestone Tire and Rubber Co.,* 219 Va. 949, 252 S.E.2d 358 (1979), is based upon the assumption that the manufacturer should have superior knowledge of his product and its potential

for danger, and that such a potentiality is neither obvious nor known to the user. The undisputed facts of this case, however, place it outside the ambit of this *Restatement* principle. First of all, there was nothing inherently dangerous in the Ponndorf itself since whether there was a pressure buildup in the conveyor depended entirely upon the procedures employed by the personnel of Anheuser-Busch in attempting to unclog the system. The evidence showed, and the plaintiff concedes, that there was no particular sequence followed by the brewery employees in unplugging the disposal system. Of even greater importance is the fact that the possibility of a pressure buildup in the conveyor was well within the technical knowledge of Anheuser-Busch. The engineers of Anheuser-Busch participated in the design and construction of the entire disposal system, including the Ponndorf, and were aware of its propensity for clogging. They were also aware of the variety of procedures followed by the employees of the brewery in attempting to relieve a clog in the system some of which would result in a pressure buildup in the Ponndorf. The hazard of such a pressure buildup was open and obvious to Anheuser-Busch and its operating personnel, and this, in our opinion, brings this case squarely within the ambit of our decision in *Spangler v. Kranco, Inc.,* 481 F.2d 373 (4th Cir. 1973).[4]

■ The only issue raised by Marshall in appealing from the judgment entered in favor of Ferguson involves the district court's refusal to charge the jury concern-

---

3. Section 388 reads as follows:

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) *has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition,* and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

(Emphasis supplied).

4. The plaintiff relies upon our decisions in *Barnes v. Litton Indus. Products, Inc.,* 555 F.2d 1184 (4th Cir. 1977); *Gardner v. Q. H. S. Inc.,* 448 F.2d 238 (4th Cir. 1971); and *Spruill v. Boyle-Midway, Incorporated,* 308 F.2d 79 (4th Cir. 1962). In each of these cases, however, we discerned that the product itself was inherently dangerous and that such inherent danger was neither obvious nor known to the user.

ing a duty to warn. Our observations on this point with respect to Ponndorf are equally applicable to Ferguson. As we have noted, the technicians and engineers of Ferguson and Anheuser-Busch worked together in the design and construction of the Williamsburg brewery as well as other breweries of Anheuser-Busch. Unquestionably the employees of Anheuser-Busch were as well informed as Ferguson in regard to the operation of the disposal system and the hazards incident thereto. Under these circumstances, we agree with the district court that Ferguson had the right to rely upon the expertise of the brewery personnel and had no obligation to warn. *See Marker v. Universal Oil Products Company, supra,* 250 F.2d 603.

Since we conclude that Marshall's injuries resulted solely from the conduct of the employees of Anheuser-Busch, the judgments are affirmed.[5]

*AFFIRMED.*

SPROUSE, Circuit Judge, dissenting:

I respectfully dissent.

A manufacturer is under a duty to exercise ordinary care to design a product that is reasonably safe for the purpose for which it is intended. *Turner v. Manning, Maxwell & Moore,* 216 Va. 245, 217 S.E.2d 863 (1975). As the majority opinion correctly notes, plaintiff thus has the burden of proving that (1) the Ponndorf was unreasonably dangerous either for the use to which it would ordinarily be put or for some other reasonably foreseeable purpose, and that (2) the unreasonably dangerous condition existed when the machine left the defendant's hand. *Logan v. Montgomery Ward & Co., Inc.,* 216 Va. 425, 219 S.E.2d 685 (1975).

The duty of a manufacturer extends to protection against the reasonably foreseeable risks of the use of his product in the particular environment which is normal for the use of that product. *Barnes v. Litton Industrial Products, Inc.,* 555 F.2d 1184 (4th Cir. 1977), *citing Spruill v. Boyle-Midway,*

*Inc.,* 308 F.2d 79 (4th Cir. 1962). The determinative questions here are whether the cleaning procedures were a reasonably foreseeable risk and, if they were, was the conveyor unreasonably dangerous for persons following those procedures. Sufficient evidence was presented at trial to indicate that these questions were properly the subject for jury consideration.

The majority would find no duty to warn on the theory that the danger was open and obvious, citing *Spangler v. Kranco, Inc.,* 481 F.2d 373 (4th Cir. 1973). *Spangler* involved an injury received from being struck by a crane on a construction site. The injury received in the case *sub judice* was caused by a build-up of internal pressure in a hops conveyor which was externally invisible and unexplained by sign or other instruction. Such a danger cannot be said, as a matter of law, to be so obvious and open as to preclude the application of the doctrine of duty to warn. *See* Restatement (Second) of Torts § 388 (1965); *Featherall v. Firestone Tire and Rubber Co.,* 319 Va. 949, 252 S.E.2d 358 (1979). This question would have been better left to the jury.

If the plaintiff had been aware of the potential build-up of pressure in the Ponndorf conveyor, the manufacturer would have had no duty to warn him. There is no evidence that he had such actual knowledge. I disagree that the knowledge of the engineers of Anheuser-Busch can be imputed to the plaintiff. While there is authority to the contrary, I believe the better view is that the knowledge of a third person relieves a manufacturer of the duty to warn only when that knowledge gives the manufacturer a reasonable assurance that the necessary information will reach those whose safety depends upon having it, the users of that product. *See* L. Frumer & M. Friedman, 1 *Products Liability,* § 8.03[3] (1979); Restatement (Second) of Torts § 388, Comment n (1965). To hold otherwise would frustrate the salutary purposes of Section 388. *Gordon v. Niagara Machine & Tool Works,* 574 F.2d 1182 (5th Cir. 1978).

5. In view of our disposition of Marshall's appeal, it is unnecessary for us to address the question of personal jurisdiction raised by Ponndorf in appeal No. 79–1080.

Whether a reasonable assurance existed in the present case was, again, a question for the jury.

Inasmuch as the evidence discloses that The H. K. Ferguson Company designed and constructed the brewing system which included the hops conveyor, I would likewise require that the question of whether Ferguson also had a duty to warn under Section 388 be submitted to the jury.