## Richmond

CHARLES MELVIN SMITH v. VIRGINIA ELECTRIC AND POWER COMPANY.

March 4, 1963.

Record No. 5532.

Present, All the Justices.

The opinion states the case.

*R. B. Stephenson, Jr.* (*J. W. C. Johnson,* on brief), for the plaintiff in error.

*Archibald G. Robertson* and *Lewis T. Booker* (*Hunton, Williams, Gay, Powell and Gibson,* on brief), for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

Charles Melvin Smith, the plaintiff, was seriously injured when a current of electricity was transmitted to him from an uninsulated high tension electric wire through a metallic rod he was using in connection with a land survey. The wire was owned and operated by the Virginia Electric and Power Company, hereinafter referred to as Vepco.

Smith filed a motion for judgment against Vepco to recover damages for his injuries. He alleged that the defendant had negligently constructed, maintained and operated its wires at a height which was dangerously unsafe for persons on or about the land over which the wires ran, and had negligently failed to warn plaintiff of the dangerous condition when it knew he would be working near the said lines. Vepco denied that it was guilty of any negligence and averred that the injuries to Smith were due to his own negligence.

The case was called for trial before a jury and, at the conclusion of plaintiff's evidence, the court, on motion of the defendant, struck the evidence on the ground it established that plaintiff's injuries were caused solely by his own negligence. Summary judgment was entered for the defendant. Plaintiff excepted and we granted this writ of error.

The evidence presented by the plaintiff is without substantial dispute. The accident occurred on May 28, 1959, at approximately 9:30 o'clock a. m. Smith, then twenty-one years of age, was born and reared in Lexington, Virginia. He was employed as a rod man on a survey crew by the Virginia State Highway Department in June, 1958. He first worked with such a crew near Natural Bridge, Virginia, and was then transferred to the Fredericksburg area, where he worked with a crew on Interstate Route No. 95. In March, 1959, he was transferred to the Lexington area, and on May 25, 1959, his crew began surveying along a mountainside for bridge sites for proposed Interstate Route No. 64 in the Dunlap Beach area of Alleghany county, about five miles west of Covington, Virginia.

On the morning of May 28, Smith was near the top of the mountain when a metallic surveyor's rod he was handling came in contact with a 44,000 volt electric transmission line of the defendant. He and several others were taking elevations and surveying contour lines. They descended the mountain along a footpath which they cut through the brush and vegetation at right angles to the proposed highway center line. Jim McCrowell, a member of the crew, went ahead

carrying a tape measure. Smith, the rod man, facing backward up the slope, followed a few feet behind McCrowell, and Donald Floyd, the level man, followed Smith at a distance of about 10 to 15 feet. The mountain in the area where Smith was working rises steeply above Dunlap Beach, the terrain is rocky, and covered with thick scrubby brush and heavy foliage. The rise is so steep along the line traveled by Smith that elevation increases 59 feet in a horizontal distance of 72 feet. The thick brush arose high enough at some places to be over a man's head and at other places is chest-high. On the right-of-way under the power line, the brush was lower. It had been formerly cut but had grown back somewhat. One witness said that the brush on the right-of-way was thinner than that on each side of the center for a distance of 20 or 30 feet therefrom. Where the accident occurred, the electric wires crossed a narrow ridge and the wires were closer to the ground there than they were at any point distant 10 feet on each side of the ridge. There was no evidence as to their exact height above the ground at any particular point.

The rod Smith carried was 13.8 feet long. It showed burn marks at its top where contact was made with the electric wire and marks on its lower end where it had been held by the hands of Smith. This establishes the height of the wires from the ground at the least as being as much as the distance from the burn marks at the top of the rod to the point on its lower end where it was held by Smith, plus the distance from the latter point to the ground below.

Mrs. Vada Myers, who lived in the area involved, said that the transmission line had five wires, which were attached to small insulators on a crossbar attached to poles, and that they sagged somewhat between the poles.

E. H. Richardson, the owner of the property over which the right-of-way ran, and who lived at the foot of the mountain, said that the transmission line had a few years earlier been raised, at his request, about 7 feet above its former height of 7 feet, and that the new elevation was satisfactory to him. He testified that he remembered seeing two ladies on the mountain during the fall before the trial; but they were the last people he had seen there. He also said that children sometimes played on the mountain; but that it had been 4 or 5 years since he had seen any children there. Moreover, he "wouldn't say that people frequented the ridge" where the accident occurred.

Floyd Lane testified that he had been living at the bottom of the hill where the accident occurred about 6 years; that he had seen

hunters go up there during the hunting season; that his boy and other boys were seen sometimes "swinging on grapevines" and cutting the tops of trees that had blown down; and that he thought the children climbed up on the rocks as a challenge. The testimony about the children related to occurrences about 2 years before the accident.

There was evidence that before the accident, Vepco was given notice that surveying parties of the Virginia Department of Highways would be working in the area in connection with the location and design of the new highway.

It was stipulated that "The National Electrical Safety Code in effect when plaintiff was injured recommended a minimum vertical clearance above ground of 17 feet where wires of 15,000 to 50,000 volts cross over spaces or ways accessible to pedestrians only."

Smith testified that when he went to the top of the mountain on Monday, May 25, he saw the transmission line where it crossed a ridge about 75 feet from the place where he was injured. He recalled that on the same day there was some conversation among the crew about what type of line it was. He said that he had talked with the men in his party about electric wires and the possible danger, and that he knew "if you get the rod up in them, you knew it would be dangerous there, and everybody looked out."

Smith described the slope he was descending on the morning of May 28, as "very steep, practically, in places straight up and down, just so steep it was all you could do to stay on the side of it," and slippery because of a rain the night before. He said he had to be very careful with his footing and watch his steps as he descended. Sometimes he had to walk "straddle-legged" across ridges, and to stand in that position when he stopped to hold up his rod so that measurements could be taken by Donald Floyd, the level man. While performing his duties, continuing his descent, holding up his rod, and looking backward toward Floyd, he was suddenly injured. On the witness stand, he said he had no recollection as to just what happened at that immediate time. However, in giving a medical history to three physicians after the accident, he told each of them that his rod came in contact with the electric line.

Floyd, the level man, who was reading the elevations from Smith's rod, said he had noticed the transmission line before Smith was injured; but did not recall where or when. He had heard other members of the crew talking about the line as carrying high voltage, either the evening before or the morning of Smith's injury; but he had no

idea what the voltage was. He did not see Smith when the latter's rod came in contact with the line. He was looking in another direction, and his attention was attracted to the accident by a flash of fire and "a loud noise sounding something like a pistol shot." He then saw Smith falling, and immediately thought that Smith "had been electrocuted."

Kenneth Hostetter, a member of the surveying party, who was not present at the time of the accident, but later went to the scene, said he had no difficulty in seeing the line at the point where Smith was injured, and in realizing it was an electric transmission line.

Smith claims that the trial court erred in striking the evidence on the ground that it was sufficient to present all questions of negligence to the jury. He argues that the area of the accident was shown to be frequented by pedestrians; that Vepco knew surveyors would be working there; that it knew the terrain was rough, rocky and very steep, and covered with thick brush, making it difficult for a person to keep from falling; and that the elevation of the wires was not in conformity with recognized standards of safety. He further challenges the exclusion and admission of certain testimony.

■ Generally, questions of negligence and contributory negligence are for the jury. Whether such questions should be submitted to a jury or determined by the court must always turn on the peculiar facts of the particular case; but where reasonable men may draw but one inference from the facts, they become questions of law for the court. *Virginia Electric and Power Co.* v. *Wright*, 170 Va. 442, 446, 447, 196 S. E. 580; *Virginia Electric and Power Co.* v. *Steinman*, 177 Va. 468, 474, 14 S. E. 2d 313; *Leo Butler Co.* v. *Wilbun*, 192 Va. 263, 268, 64 S. E. 2d 738; *Bottling Co.* v. *Lambert*, 196 Va. 949, 955, 86 S. E. 2d 156; *Adams* v. *Allen*, 202 Va. 941, 945, 946, 121 S. E. 2d 364; *Finck* v. *Brock*, 202 Va. 948, 951, 121 S. E. 2d 373; *Allen* v. *Brooks*, 203 Va. 357, 361, 124 S. E. 2d 18; *Tea Co.* v. *Rosenberger*, 203 Va. 378, 380, 124 S. E. 2d 26; 13 Michie Jur., Negligence, §§ 64 and 65, pages 593 *et seq.*

"It has long been recognized that the danger of electrical energy is a matter of common knowledge to all persons of ordinary intelligence and experience." *Watson, Adm'x* v. *Virginia Electric and Power Co.*, 199 Va. 570, 575, 100 S. E. 2d 774.

It is well settled that those engaged in the distribution of electricity are required to use a high degree of care—care commensurate with the danger involved—in order to prevent injury to others. At places

where others have a right to work and may reasonably be expected to go for work, business or pleasure, there is a duty to keep wires carrying a dangerous voltage properly insulated. *Trimyer* v. *Norfolk Tallow Co.*, 192 Va. 776, 783, 66 S. E. 2d 441; *Northern Virginia Power Co.* v. *Bailey*, 194 Va. 464, 469, 73 S. E. 2d 425; *Glasscock* v. *U. S.*, 207 F. Supp. 318 [E. D. Va. 1962]; 29 C. J. S., Electricity, § 39, page 575; 18 Am. Jur., Electricity, § 48, page 443.

It is equally well settled that one who is guilty of negligence or contributory negligence, which causes or efficiently contributes to his injuries is not entitled to recover damages therefor. *Watson, Adm'x* v. *Virginia Electric and Power Co., supra,* 199 Va. at page 575; 13 Mich. Jur., Negligence, § 26, pages 539 *et seq.* and cases cited; 38 Am. Jur., Negligence, § 174, pages 848 *et seq.*

"One cannot charge another in damages for negligently injuring him when his own failure to exercise due and reasonable care was responsible for the occurrence of which he complains." *Flakne* v. *Telephone Co.,* 199 Va. 31, 34, 97 S. E. 2d 650, 652; *Gottlieb* v. *Andrus,* 200 Va. 114, 118, 104 S. E. 2d 743.

Nor in Virginia will courts undertake to balance the negligence of the respective parties for the purpose of determining which was most at fault. *Bottling Co.* v. *Lambert, supra,* 196 Va., at page 955; 13 Mich. Jur., Negligence, § 27, pages 541 *et seq.*

We have set out the evidence somewhat at length and re-stated the principles of law applicable to the contentions of both plaintiff and defendant because of the several assignments of error by the plaintiff. However, the only assignment of error which we need to consider challenges the ruling of the court that plaintiff's injuries were caused by his own negligence. This brings us to a test of the evidence relating to that question.

Smith testified that he had, on May 25, seen the transmission line only 75 feet from the point where he was injured three days later. He said he was a party to a conversation with his crew about what type of line it was. He admitted that it might be dangerous to get his surveyor's rod in contact with the particular overhead lines. He, however, proceeded down the slope looking backward instead of upward, regardless of the ground and the wires overhead. The difference in the growth of the shrubbery and brush under the lines and on either side of the right-of-way made no impression on him. Hostetter, who came to the scene later on the day of the accident, said he had no difficulty in observing the transmission line. Floyd,

who was only 10 or 15 feet distant from Smith when Smith was injured, looked up and had no difficulty in seeing it. Both Hostetter and Floyd said that the shrubbery and brush on the right-of-way of the power company were thinner about 20 or 30 feet on each side of the center of the right-of-way than elsewhere on the mountain slope. Yet, with his notice of the existence of the wires, and the difference in the size and height of the shrubbery on the right-of-way under the wires, Smith failed to look when he should have looked, or, having looked, failed to see what was in his unobstructed view, and what was obvious to the other persons connected with his survey party.

The evidence as to his negligence is not in conflict and the issue cannot be in doubt. The evidence presented no question for a jury. The negligence, if any, of Vepco did not dispense with the requirement of due and ordinary care on the part of Smith.

"(W)here a litigant testifies unequivocally to facts within his knowledge and upon which his case turns, he is bound thereby." *Crew* v. *Nelson*, 188 Va. 108, 113, 49 S. E. 2d 326; *Massie* v. *Firmstone*, 134 Va. 450, 462, 114 S. E. 652; *Virginia Electric and Power Co.* v. *Mabin*, 203 Va. 490, 493, 125 S. E. 2d 145.

We hold that Smith was negligent as a matter of law, that his negligence was a proximate cause of the accident, and that the trial court correctly held he was not entitled to a recovery against the defendant.

The factual situation in the instant case and in the cases of *Northern Virginia Power Co.* v. *Bailey, supra*, 194 Va. and *Virginia Electric and Power Co.* v. *Mabin, supra*, 203 Va., relied on by the plaintiff are different. The facts in the instant case are more in keeping with those in *Watson, Adm'x* v. *Virginia Electric and Power Co., supra*, 199 Va.

In the *Bailey* and *Mabin* cases, the evidence presented in each the question whether the plaintiff was guilty of contributory negligence. Here, we find no conflict in the evidence as to plaintiff's negligence, as was found in *Watson, Adm'x* v. *Virginia Electric and Power Co., supra*.

There is no merit in the assignment relating to the exclusion and admission of certain testimony. That evidence, whether admitted or excluded, could not change the result. It was not relevant to the question of plaintiff's negligence.

The judgment is affirmed.

*Affirmed.*