Jack LUST, Jr., Appellant,

v.

CLARK EQUIPMENT CO.,
INC., Appellee,

JOHN CECIL LEWIS CO., INC.,
Third-Party Defendant,

v.

Floyd Stephen CHAPMAN,
Third-Party Defendant.

No. 85–1367.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 5, 1985.

Decided June 4, 1986.

Hugh E. Donovan (Donovan & Nash, Silver Springs, Md., on brief), and Peter C. Burnett, Leesburg, Va., for appellant.

Edward S. Digges, Jr. (Digges, Wharton & Levin, Annapolis, Md., on brief), for appellee.

Before WINTER, Chief Judge, WIDENER, Circuit Judge, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Jack Lust, Jr., asserting breach of an implied warranty of merchantability, appeals from an order granting Clark Equipment Co. judgment notwithstanding a verdict awarding him $55,000 for personal injuries he sustained while attempting to repair a machine manufactured by Clark. The district court held that there was insufficient evidence for the jury to find that Clark's product was unreasonably dangerous for its intended use and alternatively that recovery was barred as a matter of law because Lust assumed the risk of injury from the product. Because there was evidence to support the jury's finding in favor of Lust on both these issues, we reverse.

## I

Lust suffered a crushing injury to his right hand while attempting a minor repair on a Model 720 Bobcat Skid Steer Loader that was manufactured and sold by Clark. The Bobcat is a front-end loader that uses a hydraulic lift to raise and lower a bucket with a capacity of about 1100 pounds. As a result of his injury, Lust's right thumb was amputated.

Lust worked as a laborer for Southland Concrete Construction Company. On the day of the accident he was using a hand rake to fine grade gravel the Bobcat brought to the ground floor of a building under construction. During the work, the machine's choke rod became disconnected, reducing the air supply to the engine and causing it to sputter. Without turning the engine off or lowering the bucket from its raised position, the Bobcat's operator asked Lust to reconnect the rod. To make the repair, Lust reached his right hand between the horizontal metal frame, or gusset, of the Bobcat and the upraised lift cylinder which raises and lowers the arms of the bucket. While Lust's hand was in this "pinch point," the lift cylinder for unknown reasons suddenly lowered, crushing his hand.

## II

■ The question to be resolved when deciding a motion for judgment notwithstanding the verdict is whether there is evidence on which a jury can properly base a verdict. *Ralston Purina Co. v. Edmunds*, 241 F.2d 164, 167 (4th Cir.1957). A mere scintilla of evidence is insufficient to sustain the verdict, and the inferences a jury draws to establish causation must be reasonably probable. *Improvement Co. v. Munson*, 81 U.S. (14 Wall) 442, 448 (1871); *Lovelace v. Sherwin Williams Co.*, 681 F.2d 230, 241–42 (4th Cir.1982). Speaking of review of the analogous motion for a directed verdict, we said in *Tights, Inc. v. Acme-McCrary Corp.*, 541 F.2d 1047, 1055–56 (4th Cir.1976):

> [O]ur power of review continues to be limited by the Seventh Amendment, which provides that "no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than

according to the rules of the common law." ... We may not, therefore, weigh the evidence, pass on the credibility of witnesses, or substitute our judgment of the facts for that of the jury.... Instead, we must view the evidence in the light most favorable to the party against whom the motion is made, giving him the benefit of all reasonable inferences from the evidence....

The standard imposes a strict limitation on a court's function when it addresses a motion for a directed verdict or a judgment notwithstanding the verdict. These principles govern both the trial of this case and its appeal. *See* 9 Wright & Miller, *Federal Practice and Procedure,* § 2525 (1971).

### III

Virginia law, which is applicable to this diversity action, requires a plaintiff bringing a claim for breach of an implied warranty of merchantability to show that he was injured by "goods [that] were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose," and that "the unreasonably dangerous condition existed when the goods left the defendant's hands." *Logan v. Montgomery Ward & Co.,* 216 Va. 425, 428, 219 S.E.2d 685, 687 (1975). A product may be unreasonably dangerous if imprudently designed. *See, e.g., Dreisonstok v. Volkswagenwerk, A.G.,* 489 F.2d 1066, 1069–73 (4th Cir.1974). Lack of adequate warnings about its hazards may also establish that it is unreasonably dangerous. *See, e.g., Spruill v. Boyle-Midway, Inc.,* 308 F.2d 79, 85–86 (4th Cir.1962). If, however, the danger from the product is known, visible, or obvious to the plaintiff, there is no liability on an implied warranty of merchantability. *Brockett v. Harrell Bros., Inc.,* 206 Va. 457, 463, 143 S.E.2d 897, 902 (1965).

Lust's mechanical engineering and safety expert testified that the Bobcat was unreasonably dangerous because the design was defective. He explained that if the pivot point of the lift cylinder had been raised two inches the space between the cylinder and the frame or gussett would have been increased and Lust's hand would not have been crushed. He added that the "pivot could have been raised several inches without causing any problems as it relates to the operation of this equipment. There are other similar front end loaders, skidsteer loaders, which indeed have that pivot point substantially higher, and the danger which is present in this machine simply isn't there."

Lust's expert also testified that even with the pivot point located where it was, Clark could have avoided the danger by placing an inexpensive screen in front of the pinch point where Lust was injured. The screen or guard would have prevented a worker from putting his hand in the space when he attempted to connect the choke rod.

As a third means of preventing the type of injury Lust received, the expert testified that Clark should have complied with Standard J–38 promulgated by the Society of Automotive Engineers in 1974, three years before Clark manufactured this machine. The standard is voluntary, it is not imposed by the government, but it does reflect the judgment of the Society's technical board of directors after extensive review. Standard J–38 calls for a safety device or a safety bar that will hold the bucket of a loader up to prevent it from being inadvertently lowered while someone is working on the machine. Clark's machine was not equipped with a safety device. Two different kinds of devices were offered as optional equipment, but in the opinion of the expert they should have been offered as standard equipment. Also at the very least, the expert said, Clark should have placed a warning label at the point where Lust's hand got pinched.

The expert testified that the danger of the pinch point was not open and obvious except to engineers. From an engineering standpoint, he explained, the danger of a worker being injured at the pinch point where Lust's hand was crushed was foreseeable. He added that "the technical literature actually speaks to pinch points of this

nature on front end loaders, and the necessity of protecting workers through proper design, guards, [and] stop bars."

Clark's evidence was in sharp conflict. Its expert was the mechanical engineer who led the team that designed the Bobcat in 1970. He testified that the pivot point was located at the "optimum place" for the efficient operation of the machine, but he admitted that other front end loaders were constructed without a similar pinch point. He had never heard of a similar accident, and he testified that it was not foreseeable. Consequently, he believed a guard or warning was unnecessary. In his opinion the Bobcat was in compliance with Standard J–38 because safety devices were available.

Clark's expert also pointed out that the instruction manual warned against making repairs while the engine was running. The bucket could be lowered, however, even when the engine was not running, and the manual did not instruct that repairs should be made with the bucket down. The expert admitted that he knew some mechanics made repairs with it up. He also admitted that the Bobcat could have been designed with a gusset or frame placed lower to increase the space at the pinch point where Lust's hand was crushed, but "we didn't think we had to."

Clark insists that the trial court correctly concluded that as a matter of law Lust failed to adduce sufficient evidence that the Bobcat was unreasonably dangerous when used in a reasonably foreseeable manner. It contends that Lust's conduct and the manner in which he was injured were not foreseeable. In support of its position it relies primarily on *Turner v. Manning, Maxwell & Moore, Inc.*, 216 Va. 245, 217 S.E.2d 863 (1975), a case in which an injured worker was denied recovery as a matter of law when a hoist was not being operated for its intended use. The hoist was designed to lift unobstructed articles of limited weight. Instead, it was used at the time of injury to pull apart fused metal, and the injury resulted from a backlash that would not have occurred if the hoist had been used as intended.

Here, in contrast to *Turner*, the Bobcat was being used for precisely the work for which it had been designed and sold—the movement of gravel. The testimony of Lust's expert provided ample evidence for a properly instructed jury to find that imprudent design and lack of a guard, warning, or safety devices made the Bobcat unreasonably dangerous for its intended use. The jury was not precluded as a matter of law from deciding on the basis of the evidence that it was reasonably foreseeable that in the ordinary course of use the machine might sputter and a worker might get injured at the pinch point while trying to make a minor repair. *Cf. Gardner v. Q.H.S., Inc.*, 448 F.2d 238, 242–43 (4th Cir.1971) (reasonable foreseeability of the risk of harm is ordinarily an issue for the jury). To set aside the verdict of the jury, a court would have either to disbelieve Lust's expert or to attach little weight to his testimony. But granting judgment notwithstanding the verdict on these grounds would violate the principles explained in Part II of this opinion. We agree with the Fifth Circuit that "[i]t was for the jury to decide which of the experts was more credible, which used the most reliable data, and whose opinion—if any—the jury would accept." *Grenada Steel Industries v. Alabama Oxygen Co.*, 695 F.2d 883 (5th Cir.1983).

### IV

Virginia courts have not yet decided whether assumption of risk is a defense to a breach of warranty claim. A cause of action for personal injuries based on breach of warranty as developed by the Virginia courts bears considerable similarity to the doctrine of strict liability, which is explained in Restatement (Second) of Torts § 402A (1965). Nevertheless, Virginia has not adopted § 402A. Virginia's doctrine of breach of warranty and the Restatement's doctrine of strict liability both exclude the defense of contributory negligence. The Restatement, however, recognizes the defense of assumption of risk. *See* § 402A comment n. In agreement with the district

court, we believe that Virginia courts would also recognize the defense of assumption of risk to an action based on breach of warranty, which in other respects is closely related to an action based on strict liability as delineated in § 402A.

■ Virginia, of course, recognizes assumption of risk as a defense to an action for negligence. The Supreme Court of Virginia has defined it in these terms: "[A]ssumption of risk (venturousness) . . . has two requirements: 'the nature and extent of the risk must be fully appreciated and the risk must be voluntarily incurred.' " *VanCollom v. Johnson*, 228 Va. 103, 106, 319 S.E.2d 745, 746 (1984). The burden of proving assumption of risk is on the defendant.

Evidence considered by the court in setting aside the verdict on the ground of assumption of risk included the fact that Lust had operated and repaired machines similar to the Bobcat that injured him. From this the court drew the inference that Lust knew the design and construction of the Bobcat. Lust also admitted that he knew the engine was running when the operator asked him to connect the choke rod. On cross-examination he was asked these questions:

Q. As you placed your hand in to make that connection, you knew that with your hand in there that the lift-arm mechanism could come down onto your hand as it was in that position; you knew that at the time you did it, isn't that correct?

A. Yes.

Q. And you did it anyway, didn't you?

A. Yes.

It was largely on the basis of these answers that the district court granted judgment notwithstanding the verdict on the issue of assumption of risk.

The jury, however, was entitled to view Lust's testimony on which the court relied in the context of other evidence that had a direct bearing on whether he fully appreciated the nature and extent of the risk. Lust unequivocally testified that when he undertook to repair the choke linkage he did not know that his hand would be injured if the bucket was suddenly lowered. In setting aside the verdict the court ruled that this testimony was not reasonable in the light of the evidence. To reach this conclusion the court had to reject the evidence of the expert who testified that the danger of the pinch point was open and obvious to an engineer but not to a worker. The court also had to discredit Lust's testimony that he had never seen how close the cylinder came to the top of the frame when the bucket was lowered. The distance between the frame or gusset and the lowered cylinder was critical. A difference of a few inches that could have been accomplished by raising the pivot point or lowering the gusset would have permitted Lust to act in safety.

■ All of this evidence the jury could either accept, as it did, or reject. But, as we have pointed out in Part II, the court did not have the same power to assess the credibility of Lust and his expert or to weigh their admissible testimony and find it wanting. Nor was the court authorized to accept the conflicting testimony of Clark's witness that the danger of the pinch point was open and obvious.

■ Whether assumption of risk is a defense to an action for personal injuries presented a question of law that the district court correctly resolved in Clark's favor. The elements of assumption of risk in Virginia also presented a question of law, and no error has been assigned to the jury charge on this issue. With these two questions of law out of the way, there remained the task of applying the doctrine to facts and inferences reasonably drawn from the facts. To perform this function the jury heard conflicting testimony and examined photographs and drawings of the Bobcat that depicted in detail the pinch point that injured Lust. Whether Lust fully appreciated the nature and extent of the risk presented a factual question for the jury— not the court. Reversing a judgment notwithstanding the verdict for a similar error with respect to the issue of contributory

negligence in *Harner v. John McShain, Inc.*, 394 F.2d 480, 481–82 (4th Cir.1968), we said:

> The question of contributory negligence in this case is not a question of law but is simply a question of opinion or judgment in regard to a particular set of facts....

> \*  \*  \*  \*  \*  \*

> That the district judge's viewpoint on the issue of contributory negligence was an entirely reasonable one does not matter.

The same principles apply with respect to the defense of assumption of risk in this case.

The judgment of the district court is reversed, and the case is remanded for entry of judgment on the verdict.

WIDENER, Circuit Judge, concurring:

I concur in the result and in the opinion with one exception.

I think that we need not, and should not, reach the question of whether the Virginia court would adopt assumption of the risk as a defense in a suit on implied warranty.

I say this because the jury was instructed on the known visible or obvious defense which the Virginia court has adopted, and the district court based its setting aside of the verdict on that theory as well as the theory of assumption of the risk.

I think there was sufficient evidence to submit the case to the jury on the correct theory, and concur with the panel that the verdict should not have been set aside.