## CIRCUIT COURT OF THE CITY OF RICHMOND

Scott Kelly

    v.

Virginia Power

May 19, 1987

Case No. Lk-924-3

### By JUDGE T. J. MARKOW

This is in response to defendant's motion to set aside the verdict[1] and is the decision on the court's deferral of consideration on defendant's motion to strike the evidence made after plaintiff rested, after all evidence had been presented, and as an objection to giving any of the court's instructions.

The motions will be sustained for reasons given here and more fully elaborated on in defendant's Memorandum In Support Of Motion To Set Aside Verdict and Enter Up Judgment Notwithstanding The Verdict.

Plaintiff, a professional house painter, was badly injured when his 28'-29' aluminum extension ladder came in contact with a Virginia Power 19,900 volt line while he was attempting to move the ladder along the building he was painting. He had been working in the apartment complex for several days and had moved the ladder along this building several times on the day the accident occurred.

The power lines were roughly parallel to the apartment building, about 10.7'-11' (depending on how measured) from the building, and about 24' from the ground. At the

---

[1] The amount of the verdict was $1.5 million. [Reporter's Note]

point of contact, the location of the line met the established national standards of the National Safety Electrical Code.

Plaintiff testified that he knew he could be seriously injured if his aluminum ladder came in contact with power lines and that if he had known these were uninsulated power lines, he would have used a fiberglass ladder for this project. He did not choose to do so though, because of the configuration the lines (they were lined vertically rather than horizontally), their dark color, the existence of a clearly insulated line at the lowest level suggested to him that these lines were telephone lines. He testified, however, that he had never learned how to accurately distinguish power lines from telephone lines, nor did he make inquiry of anyone who could have accurately identified the lines. He testified that he knew he had to be careful to not touch even these lines, because he did not want to break them. Therefore, he said he looked up to locate the lines before attempting each of his moves. He denied any tripping or stumbling during the move and could not remember what caused the contact with the wire.

There is no evidence on which the jury could have found Virginia Power to have breached its duty to the plaintiff. As one engaged in the production and distribution of electricity, Virginia Power's duty is to exercise a high degree of care commensurate with the danger involved to prevent injury to others. *Robbins v. Old Dominion Power Co.*, 204 Va. 390 (1963). *Trimyer v. Norfolk Tallow Co.*, 192 Va. 776 (1951).

Plaintiff claimed through his expert witness, Dr. Mazur, that Virginia Power should have insulated its line and should have located it farther away from the apartment building plaintiff was painting. However, at the point of contact with plaintiff's aluminum ladder, the location of an uninsulated 19.9 KV line was in compliance with the National Electrical Safety Code, the industry standard for locating such lines. Uncontradicted evidence was that the code distances from buildings and the ground took into account that persons lived in, and workers would work on, and around buildings. While compliance with the code is not in and of itself dispositive, Virginia Power was permitted to rely on its provisions in the absence of evidence that it knew or had reason to know that people would come in contact with them, notwithstanding

compliance with the code. *Trimyer v. Norfolk Tallow Co.*, 192 Va. 776, 784 (1951).

The line had been constructed twenty-one years before Kelly's accident. Other workers had worked many times before on and around the same building Kelly was painting. In fact, he testified that there were several layers of paint already on the building. There was no evidence of prior contact with these lines, nor of any notice to Virginia Power that the location of the lines presented any unusual threat because of activity at or near these apartments.

While Dr. Mazur testified that the lines should have been located beyond the code requirements, that does not present a jury question, as it gives no basis for a jury to find that Virginia Power knew or should have known of some peculiar danger at this site which would have required locating the lines beyond the distances permitted by the code.

The court is unable to find authority supporting a finding of power company negligence where power lines are constructed and maintained in accordance with code requirements in the absence of circumstances requiring variance.

Plaintiff is also barred by his own negligence. While not an expert in electricity, plaintiff is charged with knowledge possessed by persons of average intelligence that power lines are dangerous and can cause serious harm, even death. See *Danville Streetcar Company v. Watkins*, 97 Va. 713 (1900). Kelly testified that he knew he could be seriously injured if an aluminum ladder came in contact with a power line and that he saw the lines in question and knew he had to avoid contact with them. He also said that a nonconducting fiberglass ladder was available for his use and he would have used it if he had known that these were high voltage power lines. He chose not to use the fiberglass ladder because he thought the lines were telephone lines. Unfortunately, plaintiff testified he had never been told how to distinguish between telephone and power lines.

Notwithstanding his lack of ability to accurately distinguish between power lines and other less dangerous lines, plaintiff chose to work around the lines without taking any special precautions such as using a nonconductive ladder, lowering the ladder before moving it (admittedly

cumbersome and slow, but sure to avoid line contact), or making inquiry to determine the type of lines involved before proceeding in a manner commensurate with the risk. Due care demands that a person operating around lines which might be dangerous to either determine that they are not dangerous, or treat the line as if it is dangerous. It is not enough for the plaintiff to say he did not know what the lines were or that he thought them to be telephone lines when he really had no basis for making such a determination. See *Smith v. VEPCO*, 204 Va. 128 (1963).

On these facts, reasonable people could not conclude that Kelly used due care for his own safety.

The court cannot conclude that as a matter of law the defense of assumption of risk is applicable here. Assumption of risk requires a risk voluntarily incurred, the nature and extent of which is fully appreciated. The only evidence here is that Kelly did not know these were power lines. Accordingly, the jury could have found that he could not have fully appreciated the risk.

For the reasons cited, the verdict will be set aside and judgment for the defendant will be entered.