884 F.2d 1388
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
4Arthur HALLER, Marion Haller, Plaintiffs-Appellants,
v.
GREEN MOUNTAIN CABINS, INC., Alan S. Wilder, Jack Leishear,
Alice Leishear, Keith Shaver, Defendants-Appellees,
and
Schaeffner Enterprises, Inc., James Sager, K & C Log Home
Contracting Co., Ridgewood Log Homes, Defendants.
 No. 88-2870.
 United States Court of Appeals, Fourth Circuit.
 Argued May 12, 1989.
Decided Aug. 22, 1989.
 
 Mark Alexander Srere (Michael S. Sundermeyer, Christopher B. Mead, Williams & Connolly on brief) for appellants.
 J. Casey Forrester (Stewart Economou on brief), Suzanne Goldrosen Bardgett for appellees.
 Before WILKINSON and WILKINS, Circuit Judges, and CHARLES H. HADEN, II, Chief United States District Judge for the Southern District of West Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Arthur and Marion Haller filed this diversity action against Alice and Jack Leishear, Keith Shaver, Alan Wilder, Green Mountain Cabins, Incorporated, and several other defendants. The Hallers asserted numerous statutory claims and common law causes of action in contract and tort arising from the alleged inadequate design and construction of the Hallers' log house in Amisville, Virginia. During the course of the trial, the district court granted defendants' motions for directed verdicts as to several of the Hallers' statutory and common law claims. At the close of the evidence, a jury returned separate verdicts in favor of the Hallers against the two remaining defendants: Shaver and Green Mountain. The Hallers raise several issues on appeal concerning the district court's jury instructions and the directed verdicts in favor of defendants. Finding no reversible error, we affirm the judgment of the district court.
 
 I.
 
 2
 In November of 1986, Arthur and Marion Haller contacted Alice and Jack Leishear concerning the possibility of purchasing a log house. The Leishears were sales agents who recently had begun representing Green Mountain Cabins, Incorporated, a manufacturer of log-home kits. The Leishears reviewed Green Mountain's standard house plans with the Hallers, but the Hallers failed to find a design which suited their purposes. Alice Leishear then told the Hallers that Green Mountain could custom-design a log house for them.
 
 
 3
 On November 23, 1986, the Hallers gave Alice Leishear a check in the amount of $500 payable to Green Mountain for the preparation of preliminary plans. In January of 1987, the Hallers received a set of building plans consisting of four sheets folded separately in an envelope. The first three sheets included floor plans, exterior views, and elevations; the fourth sheet detailed the energy efficiency of Green Mountain homes in general. Each sheet contained the logo of the Building Officials & Code Administrators International (BOCA) and bore the inscription "BOCA Research Report = 79-49"; the fourth sheet also contained an architect's seal. The research report was an evaluation of the degree to which Green Mountain's standard house plans conformed to general BOCA Code requirements.
 
 
 4
 On January 11, 1986, the Hallers gave the Leishears a deposit in the amount of $8,500 for the delivery of a Green Mountain log-home kit. Arthur Haller subsequently executed a contract with Green Mountain, and, according to their complaint, the Hallers paid a total of $63,374 for the Green Mountain building materials.
 
 
 5
 On March 6, 1987, the Hallers signed a separate contract with Keith Shaver for the construction of a Green Mountain log home on the Hallers' property in Amisville, Virginia. Shaver was a building contractor whose name was included on a list of recommended builders given to the Hallers by the Leishears in November of 1986. The Leishears had circled Shaver's name along with the name of another building contractor. Shaver contracted to build the house for $48,978.
 
 
 6
 In April of 1987, Shaver deserted the work site and ceased all work on the Hallers' house. On May 19, 1987, a county building official inspected the job site and issued a stop work order because the construction of the house was unsafe. In the building inspector's opinion, the house should have been removed and rebuilt.
 
 
 7
 In November of 1987, the Hallers filed this diversity action naming several defendants including Alice and Jack Leishear, Keith Shaver, Green Mountain, and Green Mountain's president, Alan Wilder. The Hallers' complaint included numerous causes of action in contract and tort and also alleged that the Leishears, Green Mountain, and Wilder had violated the Virginia Consumer Protection Act. See Va.Code Ann. Secs. 59.1-196 et seq. Plaintiffs sought compensatory and punitive damages, attorneys' fees pursuant to several state consumer protection statutes, pre-judgment and post-judgment interest, and costs. Shaver did not answer plaintiffs' complaint and a default judgment was entered against him on March 10, 1988; the issue of damages against Shaver was to be determined at trial.
 
 
 8
 The case was tried before a jury in June of 1988. At the close of the evidence, plaintiffs' claims against Green Mountain for negligent design and breach of contract to provide adequate building plans and the issue of damages on plaintiffs' breach of contract claim against Shaver were submitted to the jury. The district court instructed the jury that it should separate its verdicts and apportion damages between Green Mountain and Shaver if both were found liable for plaintiffs' alleged injuries. The jury returned a verdict for the Hallers against Green Mountain in the amount of $84,484 and against Keith Shaver in the amount of $33,552. The remainder of plaintiffs' common law and statutory causes of action were either voluntarily dismissed by plaintiffs or the subject of directed verdicts in favor of defendants.
 
 II.
 
 9
 The Hallers appeal from the district court's judgment on several grounds. Appellants allege: (A) that Green Mountain, Wilder, and the Leishears violated the Virginia Consumer Protection Act, see Va.Code Ann. Secs. 59.1-196 et seq.; (B) that Green Mountain breached a contract to recommend a qualified builder and that Green Mountain and the Leishears were negligent in recommending a qualified builder; and (C) that Wilder was negligent in the design of the log house. Appellants argue that the district court therefore erred by granting defendants' motions for directed verdicts on the foregoing causes of action. We examine each issue in turn.
 
 A.
 
 10
 The Virginia Consumer Protection Act prohibits a supplier[1] from committing "fraudulent acts or practices" which, inter alia, misrepresent "that goods or services are of a particular standard, quality, grade, style or model...." Va.Code Ann. Sec. 59.1-200(6). Appellants assert that Green Mountain, Wilder, and the Leishears violated the Act by creating the false impression that the Green Mountain building plans had been drawn by architects, contained sufficient detail to enable a contractor to do an adequate job, and generally met the standards of the architectural and engineering profession. The district court granted defendants' motions for directed verdicts. We affirm.
 
 
 11
 In either granting or reviewing a directed verdict, the court's task is to determine whether there is sufficient evidence upon which a jury can properly base a verdict. See Lust v. Clark Equip. Co., 792 F.2d 436, 437-38 (4th Cir.1986). Whether the evidence is sufficient to create a jury issue "is solely a question of law to be determined by the court." 9 C. Wright & A. Miller, Federal Practice & Procedure: Civil Sec. 2524 (1971). See also Colonial Lincoln-Mercury, Inc. v. Musgrave, 749 F.2d 1092, 1098 n. 3 (4th Cir.1984); Miller v. Premier Corp., 608 F.2d 973, 981 n. 8 (4th Cir.1979). Here, we agree with the district court that appellants failed to produce sufficient evidence to support their claims under the Virginia Consumer Protection Act.
 
 
 12
 Appellants assert that defendants misrepresented the involvement of architects in the preparation of the building plans purchased from Green Mountain. They failed to produce any evidence, however, that Green Mountain, Wilder, or the Leishears represented to them that an architect would prepare the building plans. Both Arthur and Marion Haller testified that defendants never told them that an architect would design their house. Moreover, the floor plans, exterior views, and elevations provided to appellants did not include an architect's seal. Green Mountain's general energy efficiency calculations bore an architect's seal, but, as the district court noted, that seal clearly applied only to the energy efficiency aspects of the building plans. Finally, in November of 1986, appellants purchased Green Mountain's sales packet which conspicuously states that Green Mountain does not generally provide architectural drawings. We agree with the district court that the professional appearance of the building plans and appellants' assumption that the plans were drawn by an architect do not rise to the level of an actionable representation under the Virginia Consumer Protection Act.
 
 
 13
 Appellants also contend that Green Mountain violated the Virginia Consumer Protection Act by using the BOCA logo and referring to the BOCA research report in its building plans. We again disagree. BOCA generally establishes local building code guidelines in Virginia. Arthur Haller testified that he was aware of the significance of the BOCA logo and therefore assumed that its use constituted a representation that the plans met all BOCA Code requirements. Appellants failed to produce any evidence, however, that the plans did not conform to the requirements of the BOCA Code. They merely proffered testimony that the plans did not conform to the BOCA research report. The building plans initially were approved by a county building official prior to construction of the log house. Moreover, appellants were not familiar with the contents of the relevant BOCA research report; they therefore could not have relied on the report in contracting with Green Mountain.
 
 B.
 
 14
 We also reject appellants' contentions that Green Mountain breached a contractual duty to recommend a qualified builder, and, that Green Mountain and the Leishears were both negligent in recommending a qualified builder for the construction of appellants' log home. We agree with the district court that appellants' evidence was insufficient to send these issues to the jury, see 9 C. Wright & A. Miller, Federal Practice & Procedure: Civil Sec. 2524 (1971), and therefore affirm the district court's grant of defendants' motions for directed verdicts.
 
 
 15
 Neither Green Mountain nor the Leishears had a duty, contractual or otherwise, to recommend a contractor to the Hallers. Appellants have failed to establish that a cause of action for negligent referral is recognized in Virginia or would be recognized on the facts of this case. In addition, the Leishears simply provided appellants with a list of recommended builders and circled two names--one being that of Keith Shaver. Furthermore, none of the defendants assumed a contractual duty, express or implied, to recommend a qualified contractor to the Hallers. The Hallers' assertions that defendants' alleged promise to help them find a builder was part of the Green Mountain contract, and that they contracted with Green Mountain based on defendants' recommendation of Shaver, is belied by the facts in the record. The Hallers contracted with Green Mountain in January of 1987; they did not contract with Shaver until March of 1987.
 
 
 16
 It is undisputed that appellants were aware that the builders on the recommended list were independent contractors who did not work for Green Mountain or the Leishears. Arthur Haller testified at trial that he was responsible for the ultimate decision of choosing the contractor for the construction of the log house. Before or at the time appellants contracted with Shaver, defendants informed them that Shaver was involved in a dispute with another Green Mountain customer. Appellants, however, never contacted the other customer and made little effort to investigate the nature of the dispute. Simply put, we agree with the district court that the Leishears merely provided appellants the courtesy of a list of contractors; neither Green Mountain nor the Leishears breached a duty in contract or tort to recommend a qualified builder to the Hallers.
 
 C.
 
 17
 We also reject appellants' assertion that the district court erred in granting Alan Wilder's motion for a directed verdict as to appellants' cause of action for negligent design of the Hallers' log house. Although an agent is generally responsible for his tortious conduct, see 3 Am.Jur.2d Agency Sec. 309 (1986), appellants failed to present sufficient evidence upon which the jury could assess liability upon Wilder for the negligent design of the log house.
 
 
 18
 While there is evidence in the record that Wilder and two other Green Mountain employees were involved in the design of the house and the drafting of the building plans, appellants failed to produce evidence of the design aspects for which Wilder was individually responsible. The jury, therefore, could not have determined which of Wilder's actions were negligent and which caused harm to appellants. We hold that appellants failed to produce sufficient evidence at trial to support their cause of action for negligent design against Wilder in his individual capacity. We agree with the district court that this suit is more appropriately seen as a contract and tort action against Green Mountain, Wilder's employer.
 
 III.
 
 19
 Finally, appellants argue that Green Mountain should be liable for the jury's total damages award of $119,036. They assert that the district court erred by instructing the jury to separate its verdicts as to Green Mountain and Shaver and to apportion appellants' damages based on defendants' relative degree of responsibility. We again disagree.
 
 
 20
 First, the jury's verdicts against Green Mountain and Shaver were based on independent causes of action. There was no issue in this case of joint and several liability in contract or tort. When the case was submitted to the jury it included a negligence claim against Green Mountain; it did not include a tort cause of action against Shaver. This case therefore did not involve a question of concurrent negligence among joint tortfeasors. Moreover, appellants' contract actions against Green Mountain and Shaver arose from two independent contractual obligations: Green Mountain contracted with appellants in January of 1987 to supply building materials and adequate building plans; Shaver contracted with appellants in March of 1987 to construct the log house.
 
 
 21
 Second, the divisibility of appellants' damages is amply supported by the evidence in the record. Arthur Haller detailed Shaver's inadequate construction techniques and recounted several instances in which Shaver ordered and used incorrect building materials. The county building official who issued the stop work order testified that certain logs used in constructing the house had been assembled "erratically." In the opinion of appellants' expert witness, the house had not been constructed in a workmanlike manner; Shaver had not been diligent, for example, in putting the logs together. For each alleged defect, appellants' expert rendered an opinion as to whether Green Mountain was responsible, Shaver was responsible, or whether Green Mountain and Shaver shared responsibility. The district court's instruction to the jury therefore accurately reflects the fact that appellants' damages were capable of apportionment based on the evidence produced at trial.
 
 IV.
 
 22
 For the foregoing reasons, the district court's judgment is
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 "Supplier" is defined in the Act as "a seller or lessor who advertises, solicits or engages in consumer transactions, or a manufacturer or distributor who advertises and sells or leases goods or services to be resold or leased by other persons in consumer transactions." Va.Code Ann. Sec. 59.1-198(c). We agree with the district court that this statutory definition does not contemplate an employee such as Alan Wilder. The Act is therefore inapplicable to him in his individual capacity