966 F.2d 1443
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Michael W. REID, Jr., Plaintiff-Appellant,
v.
CAPITAL MACHINE COMPANY, Defendant-Appellee.
 No. 91-2250.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 4, 1992
Decided: June 26, 1992
 
 1
 Argued: Robert Lord Morrison, Jr., Williams, Stilwell, Morrison & Grimes, Danville, Virginia, for Appellant.
 
 
 2
 Sidney Harold Kirstein, McRorie & Kirstein, Lynchburg, Virginia, for Appellee.
 
 
 3
 Before PHILLIPS and MURNAGHAN, Circuit Judges, and MURRAY, Senior United States District Judge for the District of Maryland, sitting by designation.
 
 MURRAY, Senior District Judge:
 
 4
 The appellant, Michael W. Reid, Jr., brought this diversity action for damages arising from an industrial accident involving a machine manufactured by the appellee, Capital Machine Company. The machine, a veneer clipper, sliced off portions of the fingers on Reid's left hand. The complaint in this case asserted claims for negligence, for failure to warn, and for breach of implied warranties. We sit in review of the district court's order granting summary judgment in favor of Capital Machine.
 
 
 5
 * Capital Machine, an Indiana corporation, manufactured the clipper in question in 1966 and sold it in 1967 to the Lane Company in Altavista, Virginia, through the Sutton Woodworking Machine Company in Greensboro, North Carolina. Reid began working for the Lane Company in August 1987.
 
 
 6
 The clipper consisted of a heavy cast-iron frame with a table across one end and a long knife bar mounted horizontally across the frame. To use the clipper, an operator first would position a stack of uncut veneer below the knife bar. Then, the operator would activate the clipper by pressing a foot pedal, which would cause the motor in the clipper to drive the knife bar down at great speed, cleanly shearing away anything beneath it.
 
 
 7
 As manufactured by Capital Machine, the clipper had a safety rod in front of the knife bar. The purpose of the safety rod was to prevent operators from placing their hands inadvertently too close to the descending blade. However, after acquiring the clipper, Lane employees may have replaced the safety bar with a transparent plexiglass shield. Compare Appendix at 121-22 with Appendix at 91-92. Notwithstanding which safety device was installed at the time of the accident, however, nothing on the clipper prevented operators from reaching intentionally past the safety device to touch the knife bar.
 
 
 8
 On his first day of work at Lane, Reid received instruction in the use of the clipper from his supervisor, Gloria Worley. Worley showed Reid how to use the clipper and cautioned him not to place any part of his body under the knife bar. Another Lane employee, Ida Barley, also supervised Reid during his first few days at the clipper; Barley previously lost one of her own fingers in an accident with a similar machine and she showed her hand to Reid in an attempt to convince him of the danger. Despite these graphic warnings, however, Reid admitted that he regularly and routinely placed his fingers under the knife blade.
 
 
 9
 On August 22, 1987, his fourth day of work, as Reid placed a stack of veneer on the frame of the clipper, part of the stack shifted out of position. Both Worley and Barley instructed Reid to remove such an errant stack from the clipper before attempting to straighten it. Instead, Reid left the stack in the clipper and placed his hand beyond the safety rod in order to straighten the stack. Apparently, Reid's foot touched the pedal, resulting in the loss of portions of the fingers of his left hand.
 
 
 10
 The appellant retained two expert witnesses for the purposes of this litigation. Both experts testified in deposition that the clipper's inadequate guarding rendered it unreasonably dangerous and that an accident like Reid's was foreseeable if not inevitable. One of the experts opined that lack of guarding in the design of the clipper was "totally irresponsible" and did not "reflect good engineering at that time [1966, when Capital Machine manufactured the clipper] or for several decades previously." Appendix at 141-42.
 
 
 11
 Finding that Reid's contributory negligence was a proximate cause of his injuries, and further that the clipper posed an open and obvious danger, thereby absolving Capital Machine of any duty to warn about the danger, the district court granted Capital Machine's motion for summary judgment.
 
 II
 
 12
 In a diversity action such as this, we must apply the choice of law rules of the forum state. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). Virginia adheres to the traditional rule of lex loci delicti, which requires application of the "law of the place of the wrong." McMillan v. McMillan, 219 Va. 1127, 1128, 253 S.E.2d 662, 664 (1979). Because Reid suffered his injuries at the Lane Company facility in Virginia, the substantive law of Virginia controls.
 
 
 13
 We review a grant or denial of summary judgment under the same standard as the district court. Helm v. Western Maryland Ry. Co., 838 F.2d 729, 734 (4th Cir. 1988). Rule 56(c) of the Federal Rules of Civil Procedure permits a grant of summary judgment only if no genuine issues of material fact exist and the moving party is entitled to a judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The burden therefore rests with Capital Machine to demonstrate the absence of genuine issues of material fact. Further, we must construe all facts and reasonable inferences in favor of Reid, the non-moving party below. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).
 
 
 14
 * Under Virginia law, "contributory negligence is a complete bar to an action based on negligence." Jones v. Meat Packers Equip. Co., 723 F.2d 370, 373 (4th Cir. 1983); Smith v. Virginia Elec. and Power Co., 204 Va. 128, 133, 129 S.E.2d 655, 659 (1963). The test for the existence of contributory negligence asks "whether a plaintiff failed to act as a reasonable person would have acted for his own safety under the circumstances." Artrip v. E.E. Berry Equip. Co., 240 Va. 354, 358, 397 S.E.2d 821, 824 (1990). Contributory negligence is an issue of fact for the jury unless reasonable minds could not differ on the issue. Artrip, 240 Va. at 357, 397 S.E.2d at 823; Kelly v. Virginia Elec. and Power Co., 238 Va. 32, 39, 381 S.E.2d 219, 222 (1989); Graddy v. Hatchett, 233 Va. 65, 69, 353 S.E.2d 741, 743 (1987); Smith, 204 Va. at 132, 129 S.E.2d at 659.
 
 
 15
 In this case, both Worley and Barley warned Reid about the dangers of putting his fingers under the blade. Reid understood those warnings and also understood the dangers posed by the blade. Despite those warnings, Reid admitted that he "regularly and routinely put [his] fingers under the blade." Appendix at 100-01. Reid also admitted at his deposition that, at the moment of the accident, he put his hand under the blade in order to keep the stack of veneer together. Appendix 99-100.
 
 
 16
 Finding that reasonable minds could not differ on the question of contributory negligence, the district court granted summary judgment as to the negligence claims. We agree. By his own admissions, Reid placed himself in a position of danger and failed to act as a reasonable person would have acted for his own safety under the circumstances. As a result, Reid cannot recover damages for his injuries under a negligence theory.
 
 B
 
 17
 In Virginia, a manufacturer owes a duty to warn of danger not only to the immediate purchasers of its products but also to other persons who might be subjected to danger in the ordinary and natural course of events. Featherall v. Firestone Tire and Rubber Co., 219 Va. 949, 962, 252 S.E.2d 358, 366 (1979). However, where the danger posed by a particular product is open and obvious, the manufacturer is relieved of its duty to warn. Marshall v. H.K. Ferguson Co., 623 F.2d 882, 886 (4th Cir. 1980); Spangler v. Kranco, Inc., 481 F.2d 373, 375 (4th Cir. 1973); Spruill v. Boyle-Midway, Inc., 308 F.2d 79, 84 (4th Cir. 1962).
 
 
 18
 Like the issue of contributory negligence, the issue of whether a particular product poses an open and obvious danger ordinarily is reserved for a jury unless reasonable minds could not differ as to the conclusion. Scott v. City of Lynchburg, 241 Va. 64, 66, 399 S.E.2d 809, 810 (1991). In this case, the danger posed by the knife bar was both "open" and "obvious" to Reid, in the sense that there was no obstruction between Reid and the knife bar, and in that Reid knew of the existence of the knife bar and of the danger that it represented to his fingers. See id. at 66, 399 S.E.2d at 810 (citing Crocker v. WTAR Radio Corp., 194 Va. 572, 74 S.E.2d 51 (1953)); id. at 67, 399 S.E.2d at 811 (citing Hill v. City of Richmond, 189 Va. 576, 53 S.E.2d 810 (1945)). Accordingly, we agree with the district court that reasonable minds could not differ regarding the open and obvious nature of the danger posed by the clipper. As the district court noted, there are "few products whose danger is more open and obvious." Appendix at 17.
 
 
 19
 The district court received uncontradicted testimony from two experts to the effect that the clipper posed inherently unreasonable risks. Relying on that evidence, Reid argues that the district court erred when it held that Capital Machine had no duty to warn about those dangers. However, as noted by the court in Featherall, a manufacturer's duty to warn arises as a result of its superior knowledge of its own products. Featherall, 219 Va. at 962, 252 S.E.2d at 366-67. Where, as here, the dangers posed by the product are open and obvious, the manufacturer no longer stands in a position of superior knowledge about those dangers. Consequently, the uncontradicted testimony of the appellant's experts does not alter this court's conclusion with respect to the issue of Capital Machine's duty to warn.
 
 C
 
 20
 Under Virginia law, a plaintiff in a breach of warranty action bears the burden of showing
 
 
 21
 (1) that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose, and (2) that the unreasonably dangerous condition existed when the goods left the defendant's hands.
 
 
 22
 Bly v. Otis Elevator Co., 713 F.2d 1040, 1043 (4th Cir. 1983) (quoting Logan v. Montgomery Ward & Co., Inc., 216 Va. 425, 428, 219 S.E.2d 685, 687 (1975)); Marshall, 623 F.2d at 885; Featherall, 219 Va. 963-64, 252 S.E.2d at 367. As noted above, the appellant submitted undisputed expert testimony to the district court to the effect that, as a result of its design at the time of its manufacture, the clipper in this case was unreasonably dangerous for its intended use. See Lust v. Clark Equipment Co., Inc., 792 F.2d 436, 438 (4th Cir. 1986) (citing Dreisonstok v. Volkswagenwerk, A.G., 489 F.2d 1066, 1071 (4th Cir. 1974)); Bly, 713 F.2d at 1043 (citing same).
 
 
 23
 However, relying on the open and obvious danger posed by the clipper, the district court granted summary judgment on the breach of warranty claim in favor of the appellee despite the apparently imprudent design of the clipper. In Virginia, where the condition of a product is known, visible, or obvious to the plaintiff, then the manufacturer will not be liable under an implied warranty theory. Lust, 792 F.2d at 438 (citing Brockett v. Harrell Bros., Inc., 206 Va. 457, 463, 143 S.E.2d 897, 902 (1965)); see also id. at 441 (Widener, J., concurring opinion). In this case, given the clearly open and obvious nature of the danger posed by the clipper, we hold that the known, visible, or obvious defense precludes Reid's claim under the theory of breach of implied warranty.
 
 III
 
 24
 For the foregoing reasons, the judgment of the district court in this case granting summary judgment in favor of Capital Machine Company is
 
 
 25
 AFFIRMED.